IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAUL P., individually and on behalf of B.P., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHEM BLUE CROSS AND BLUE SHIELD, AN INDEPENDENT LICENSEE OF THE BLUE CROSS BLUE SHIELD ASSOCIATION; EDWARD D. JONES & Co., L.P. d/b/a/ EDWARD JONES; and THE EDWARD D. JONES & CO. EMPLOYEE HEALTH & WELFARE PROGRAM, <br><br> Defendants. | Case No. 4:25-cv-00991 |

## COMPLAINT

Plaintiffs Paul P., individually and on behalf of B.P., by and through undersigned counsel, hereby complain against Defendants, alleging in totality and alternatively as follows:

### INTRODUCTION

B.P. received 14 weeks of medical treatment at blueFire Wilderness Therapy ("blueFire"). Defendants denied payment for any of the treatment, requiring Plaintiffs to pay more than $70,000 out of pocket. Defendants' stated grounds for denial was a claim that the treatment B.P. received was "investigational," not "medically necessary," and was not covered under the Plan. This litigation thus centers around that narrow issue.

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are, and were at all times relevant hereto, residents of Maryland Heights, Missouri. Paul P. is B.P.'s father.

1

2. Edward D. Jones & Co., L.P. ("Edward Jones") is, and was at all times relevant hereto, Paul P.'s employer.

3. Through his employment, Paul P. was and is a participant in the Edward D. Jones & Co. Employee Health & Welfare Program (the "Plan").

4. B.P. is a minor and at all times relevant hereto, Paul P.'s dependent.

5. As Paul P.'s dependent, B.P. was at all times relevant hereto, a beneficiary under the Plan.

6. Edward Jones contracted with Anthem Blue Cross Blue Shield ("Anthem") to handle the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals.

7. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

8. This lawsuit is brought to obtain an order requiring Anthem to pay or reimburse expenses incurred during B.P.'s treatment at blueFire. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

9. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

10. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and the location of the Plan.

## FACTUAL ALLEGATIONS[1]

*Allegations regarding the Plan*

11. Edward Jones issued a Summary Plan Description ("SPD") effective January 1, 2022.[2]

12. The SPD, "and other various other documents (such as relevant Plan documents, insurance policies, certificates of coverage, and other benefit summaries) currently in effect taken together are the 'Plan documents.'"[3]

13. Edward Jones sponsored the Plan.[4]

14. The Plan is self-insured by Edward Jones.[5]

15. Edward Jones "also controls and manages the operation and administration of these benefits in its role as Plan Administrator under ERISA."[6]

16. Edward Jones contracted with Anthem to be "the sole designated claims administrator for all claims and appeals under the Medical Plan, including behavioral health."[7]

17. In general, the Plan covers hospital and medical services and supplies for the treatment of an injury or disease.[8]

---

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference.
[2] Summary Plan Description Overview – 2022, at page 1 of 2.
[3] Summary Plan Description Overview – 2022, at page 1 of 2; and Medical, Prescription and Behavioral Health Benefits – 2022, at page 1 of 27.
[4] Claim, Appeal, and Legal Information – 2022, at page 28 of 32.
[5] Claim, Appeal, and Legal Information – 2022, at page 29 of 32.
[6] Claim, Appeal, and Legal Information – 2022, at page 28 of 32.

3

18. The Plan provides behavioral health benefits, including mental health and substance abuse treatment, which the Plan describes as follows:

> Mental health treatment is treatment for any condition:
>
> - Which is identified in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), including a psychological and/or physiological dependence or addiction to alcohol or psychiatric drugs or medications, regardless of any underlying physical or organic cause; and
> - When the treatment is primarily the use of psychotherapy or other psychotherapist methods.
>
> All impatient services, including room and board, given for a condition identified in the DSM are considered mental health treatment, unless there are multiple diagnoses. In the case of multiple diagnoses, only treatment for the condition identified in the DSM is considered mental health treatment.
>
> Substance abuse treatment may be received on an inpatient basis in a hospital or an alternative facility, or on an outpatient basis in a provider's office or at an alternative facility.[9]

*Background of B.P.'s medical issues and treatment*

19. B.P. was 14-years old when he was admitted to blueFire.

20. Prior to his admission to blueFire, B.P. had been diagnosed with bipolar disorder and anxiety, and had attachment and abandonment issues related to his adoption and anger he felt toward his birth mother.

21. Prior to his admission to blueFire, B.P. exhibited intense, angry outbursts which resulted in his being suspended from school due to physical aggression towards his peers; he damaged walls, doors and other items in his house; and multiple instances of physical aggressiveness toward his parents.

---

[7] Medical, Prescription and Behavioral Health Benefits – 2022, at page 2 of 27.
[8] Medical, Prescription and Behavioral Health Benefits – 2022, at page 11 of 27.
[9] Medical, Prescription and Behavioral Health Benefits – 2022, at page 12 of 27.

22. In August, 2022, B.P. had a manic episode which resulted in a police altercation and a ten-day hospitalization; however, the hospitalization did not address or resolve his underlying mental health and substance abuse issues.

23. Prior to his admission to blueFire, B.P. was smoking marijuana on a daily basis, did not attend school regularly and did not engage in self-care.

24. Prior to his admission to blueFire, B.P. was diagnosed with other specified depressive disorder; other specified disruptive behavioral/impulse control disorder; other specified neurodevelopmental disorder; phase of life problem, involving bonding and attachment issues, lack of direction in his life, history of trauma, and uncertain identity; cannabis use disorder, moderate to severe; and other disorders under the criteria described in the current edition of the DSM.

25. Prior to his admission to blueFire, B.P. participated in out-patient treatment for his mental health and substance abuse disorders, but this treatment did not provide any significant or long-lasting benefit and B.P.'s conditions continued to deteriorate.

26. B.P. received medical care and treatment for these disorders at blueFire from December 14, 2022 to March 24, 2023.

27. blueFire is a 24/7 outdoor behavioral health treatment located in southern Idaho.

28. blueFire offers residential therapy programs for adolescent boys dealing with mental health and addiction issues including cannabis addiction, depression, anxiety, bipolar disorder and traumatic events.

29. At all times relevant hereto, blueFire was licensed by the state of Idaho to provide intermediate behavioral health services and operated in accordance with the governing Idaho state regulations.

30. B.P. benefitted from the intensive mental health treatment he received at blueFire and had improvements in each of his diagnosed conditions from the services he received at blueFire.

31. blueFire charged $70,485.00 for the services it provided to B.P., which charges were submitted to Anthem.

32. Anthem denied all the claims for services provided by blueFire.

33. In a letter dated December 14, 2022, Anthem denied the request for services provided by blueFire with the explanation:

> This service is excluded or not covered under your plan.
>
> Per Elevance Medical Policy MED.0122, Wilderness Programs are Considered Investigational and Not Medically Necessary for all indications. It is stated on page 27 of your Benefit Booklet, that services and supplies that are considered Experimental or Investigational Service or unproven by the Medical Plan are not covered.

*Plaintiffs' Level One Appeal*

34. On or about June 7, 2022, Paul P. served a level one member appeal, asking Anthem to review its denial of coverage of B.P.'s treatment at blueFire.

35. The level one appeal noted that the Plan is subject to ERISA, which imposed requirements on Anthem in reviewing the appeal, including the requirement that Anthem review all information applicable to the appeal.

36. In the appeal, Paul P. noted that ERISA requires that all reviewers assigned to an appeal must have appropriate qualifications and their identities be disclosed.

37. The appeal included a request that Anthem assign individuals with appropriate qualifications and experience to review the appeal; specifically, Paul P. requested that the appeal be reviewed by a medical or vocational expert who was knowledgeable about generally accepted

standards and clinical best practices for outdoor behavioral health programs in the state of Idaho where blueFire is located.

38. In the appeal, Paul P. requested Anthem assign a reviewer who is board certified in child and adolescent psychiatry with experience treating adolescents with the disorders with which B.P. had been diagnosed.

39. In the appeal, Paul P. requested Anthem have someone trained in the MHPAEA ensure that the Plan was being administered in compliance with this law and to provide a parity analysis.

40. In the appeal, Paul P. noted that the Plan documents provide coverage for the treatment of "Behavioral Health – Mental Health and Alcohol and Drug Abuse" conditions in inpatient settings, and did not have any limitation or exclusion for intermediate behavioral health treatment or outdoor behavioral health programs.

41. The appeal notes that the Policy describes "Experimental or Investigational Services" as:

> Medical, surgical, diagnostic, psychiatric, mental health, substance use disorders or other health care services, technologies, supplies, treatments, procedures, drug therapies, medications or devices that, at the time Edward Jones makes a determination regarding coverage in a particular case, are determined to be any of the following:
>
> - not approved by the U.S. Food and Drug Administration (FDA) to be lawfully marketed for the proposed use and not identified in the American Hospital Formulary Service or the United States Pharmacopoeia Dispensing Information as appropriate for the proposed use;
>
> - subject to review and approval by any institutional review board for the proposed use (devices which are FDA approved under the Humanitarian Use Device exemption are not considered to be Experimental or Investigational);

7

- the subject of an ongoing Clinical Trial that meets the definition of a Phase 1, 2 or 3 Clinical Trial set forth in the FDA regulations, regardless of whether the trial is actually subject to FDA oversight; or

- therapeutic interventions not endorsed or widely accepted by the general medical community as the standard of care or best practice/intervention to treat the condition for which the intervention is intended.[10]

42. In the appeal, Paul P. argued that the services provided by blueFire do not meet the Plan's definition of experimental services because outdoor behavioral health programs do not require approval by the F.D.A. or approval from the American Hospital Formulary Service, nor are these programs the subject of ongoing clinical trials; rather, outdoor behavioral health programs in general, and blueFire in particular, are licensed and approved by state regulatory agencies.

43. Additionally, Paul P. pointed out in the appeal that the American Hospital Association and the National Uniform Billing Committee approved revenue code 1006 specific to outdoor behavioral health care which shows that this type of therapeutic intervention is endorsed and widely accepted by the general medical community.

44. Paul P. included with the appeal a sample of peer-reviewed research papers finding that the outdoor behavioral health level of care has been proven to be an effective treatment modality.

45. As additional evidence that the outdoor behavioral health treatment that B.P. received at blueFire was not investigative, Paul P. included a letter from Dr. Michael Gass, PhD, refuting the basis for Anthem's claim that services provided by outdoor behavioral health programs are not proven to be effective, as well as a collection of forty-six letters in which clinical professionals from all over the country have each affirmed that this level of care is not

experimental or investigative, but is instead consistent with generally accepted standards of medical practice.

46. The SPD does not contain a definition of medical necessity, and instead defers to Anthem's internal guidelines to determine whether a service, supply, confinement, medical care or treatment is medically necessary.

47. The appeal quoted the definition of "Medically Necessary" found in Anthem's Medical Policy as follows:

> "Medically Necessary" services are procedures, treatments, supplies, devices, equipment, facilities or drugs (all services) that a medical practitioner, exercising prudent clinical judgment, would provide to a covered individual for the purpose of preventing, evaluating, diagnosing or treating an illness, injury or disease or its symptoms, and that are:
>
> - in accordance with generally accepted standards of medical practice; and
> - clinically appropriate in terms of type, frequency, extent, site and duration and considered effective for the covered individual's illness, injury or disease; and
> - not primarily for the convenience of the covered individual, physician or other health care provider; and
> - not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that covered individual's illness, injury or disease.
>
> For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, national physician specialty society recommendations and the views of medical practitioners practicing in relevant clinical areas and any other relevant factors.

48. The appeal included copies of B.P.'s medical records from blueFire to show that the treatment he received was medically necessary as they were safe and effective in treating his behavioral health conditions.

---

[10] Medical, Prescription and Behavioral Health Benefits – 2022, at page 2 of 27.

49. In the appeal, Paul P. expressed his concern that Anthem was applying treatment limitation of the kind prohibited by the MHPAEA, and requested that Anthem's review of the appeal include conducting a comparative parity analysis to determine whether or not the Plan was being administered in compliance with the MHPAEA and to provide him with physical copies of any and all documentation used in the analysis and a thorough description of the analysis so that Paul P. could conduct his own comparative parity analysis and appropriately plead his case.

50. Anthem responded to the level one member appeal with a letter dated July 6, 2023, denying the appeal.

51. The level one appeal requested that Anthem identify the name and qualifications of the person(s) who reviewed the appeal, but the denial letter did not identify by name or qualifications any person who reviewed the appeal or participated in the decision to deny the appeal; to the contrary, the denial letter only represented that "An experienced healthcare professional has reviewed the request for care that you or your doctor recently sent us."

52. The denial letter reported:

> **Results of the review**
> Our review showed that the care you've requested is Not Medically Necessary. We can't approve your request because your plan doesn't cover care that is Not Medically Necessary.
>
> **Details from the review (consider discussing with your doctor)**
> Specifically, we made this decision because your service is not a standard medical practice in the U.S. for your current condition. The request tells us your provider is asking to continue your treatment through a Wilderness program. This treatment is not approvable under the plan clinical criteria because there is not proof or not enough proof it improves health outcomes. For this reason, the request is denied as investigational and not medically necessary. There may be other settings to help you, such as outpatient treatment. You may want to discuss these with our doctor. It may help your doctor to know we reviewed this request using the medical necessity criteria as stated in MED.00122H – Wilderness Programs

*Plaintiffs' Level Two Member Appeal*

53. On or about August 29, 2023, Paul P served a level two member appeal, disputing Anthem's determination that the treatment B.P. received at blueFire was investigational and therefore, not medically necessary.

54. In the level two appeal, Paul P. noted that Anthem failed to conduct a full review of the case required under ERISA, as evidenced by Anthem's failure to include all dates of service, and instead only acknowledged seven days of services.

55. In the level two appeal, Paul P. pointed out that he had requested Anthem provide clear evidence that the Plan was being administered in accordance with the MHPAEA by conducting a parity analysis, but that Anthem's response did not include this information or the plan documents thereby depriving Plaintiffs of the opportunity to conduct an independent parity analysis.

56. In the level two appeal, Paul P. asserted that Anthem had failed to meaningfully respond to the arguments and evidence presented in the level one appeal, depriving him of the opportunity to strengthen his case or engage in productive dialogue.

57. Paul P. again specifically requested that Anthem's next reviewer fully and thoroughly review their case, including the level one appeal, and respond to all of the arguments and evidence presented in that appeal as required by ERISA.

58. In the level two appeal, Paul P. expressed his belief that Anthem's reviewer was not appropriately qualified to review Plaintiffs' case, and requested that the next reviewers have specific qualifications necessary to adequately and properly review the case.

59. Paul P. again argued that the Plan provides coverage for outdoor behavioral health programs, such as blueFire, because the Plan provides coverage for the treatment for behavioral

11

health, including mental health and alcohol and drug abuse conditions in inpatient settings, and does not specifically exclude outdoor behavioral health programs.

60. Paul P. again argued that the treatment that B.P. received at blueFire was medically necessary and was not experimental, and included additional documentary evidence supporting the effectiveness of outdoor behavioral health programs to show that these programs are not investigational or experimentational.

61. In the level two appeal, Paul P. again requested that if Anthem continued to deny the claim that it send Plaintiffs a copy of all documents under which the Plan is operated, as well as any clinical guidelines or medical necessity criteria utilized n Anthem's determination as well as their medical or surgical equivalents so that Plaintiffs could conduct a parity analysis of the Plan's mental health coverage to evaluate whether the Plan was complying with the MHPAEA.

62. Anthem issued a letter dated October 9, 2023, that again denied the claim.

63. The denial letter explained its decision as follows:

> We reviewed all the information that was given to us before with the first request for coverage. We also reviewed all that was given to us for the appeal. Your doctor wanted you to have hospital care. Specifically, we made this decision because your service is not a standard medical practice in the U.S. for your current condition. The request tells us your provider is asking to continue your treatment through a Wilderness program. This treatment is not approvable under the plan clinical criteria because there is no proof or not enough proof it improves health outcomes. For this reason, the request is denied as investigational and not medically necessary. There may be other settings to help you, such as outpatient treatment. You may want to discuss these with your doctor. It may help your doctor to know we reviewed this request using the medical necessity criteria as stated in MED.00122H – Wilderness Programs.
> The treatment was considered not medically necessary. Services that are not medically necessary are excluded from coverage, according to page 24, under the What's Not Covered section, of your Edward D Jones & Co LLP (benefit booklet), dated December 1, 2017.

64. As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

65. The denial by Anthem/the Plan of benefits solely and directly caused Plaintiffs to pay $70,485.00 for B.P.'s treatment at blueFire.

66. After receiving the denial, litigation was Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

67. Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

68. The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

69. All allegations of this Complaint are incorporated here as though fully set forth herein.

70. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

71. Anthem and the Plan wrongly excluded coverage for B.P.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health disorders.

72. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

73. Anthem/the Plan's Denial Letters demonstrate the absence of a meaningful analysis of Plaintiffs' appeals. Among other things, Anthem/the Plan did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or evidence raised during the appeal process.

74. Anthem/the Plan breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in B.P.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of B.P.'s claims.

75. The actions of Anthem and the Plan in denying payment for B.P.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

## SECOND CAUSE OF ACTION

**(Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))**

76. All allegations of this Complaint are incorporated here as though fully set forth herein.

77. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Anthem/the Plan's fiduciary duties.

78. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

79. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

80. Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

81. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for B.P.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

82. The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner Anthem/the Plan excluded coverage of treatment for B.P. at blueFire.

83. Upon information and belief, Anthem/the Plan's denial of coverage also violated the MHPAEA in application or effect. Because Anthem/the Plan declined to produce the

15

Case: 4:25-cv-00991-SRC   Doc. #: 1   Filed: 07/03/25   Page: 16 of 18 PageID #: 16

requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

84. Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

85. Plaintiffs expressly requested Anthem perform a MHPAEA analysis of the Plan. They expressed serious concern that Anthem was violating the statute and asked for a response using specific and direct examples. Anthem failed or declined to do this and failed or declined to even address the MHPAEA in its Denial Letters.

86. These MHPAEA violations by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

    a. A declaration that the actions of Defendants violate the MHPAEA;

    b. An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

    c. An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

    d. An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

16

  e. An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

  f. An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

  g. An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

  h. An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

87. In addition, Plaintiffs are entitled to an award of pre-judgment interest pursuant to U.C.A. § 15-1-1, and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount owed for B.P.'s treatment at blueFire;

2. Pre- and post-judgment interest to the date of payment;

3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;

4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 3rd day of July, 2025.

        BROWN & JAMES, P.C.

        */s/ Steven H. Schwartz*
Steven H. Schwartz, #36436MO
sschwartz@bjpc.com
800 Market Street, 11th floor
St. Louis, Missouri 63101
(314) 421-3400
Fax: (314) 421-3128

**Attorneys for Plaintiffs**

SHS:maf:32275416.1