UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL P., individually and on behalf of B.P., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:25-cv-00991-SRC |
| ANTHEM BLUE CROSS AND BLUE SHIELD, an independent licensee of The Blue Cross Blue Shield Association et al., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**<u>Memorandum and Order</u>**

B.P., a minor, struggles with several mental-health conditions and a substance-abuse issue.  Though his father—Paul P.—had B.P. admitted to an outpatient treatment program, B.P.'s condition continued to worsen.  So Paul P. had B.P. admitted to blueFire—an outdoor behavioral health treatment center (also known as a "wilderness program").  When the bill came due, Paul P. submitted it to Anthem—the administrator of his employer's employee-welfare-benefits plan.  After Anthem denied his claims and subsequent appeals, Paul P., both individually and on behalf of B.P., filed this suit asserting a wrongful-denial-of-benefits claim under ERISA and a Mental Health Parity and Addiction Equity Act claim.  Defendants move to dismiss the Parity Act claim.

## I.      Factual background

The Court accepts the following well-pleaded facts as true for purposes of this Memorandum and Order.  Edward D. Jones & Co., L.P., employs Paul P.  Doc. 1 at ¶ 2.  As part of his employment benefits package, Paul P. participates in Edward Jones' "Employee Health & Welfare Program" (the Plan).  *Id.* at ¶ 3.  Edward Jones contracts with Anthem Blue Cross Blue

Shield "to handle the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals." *Id.* at ¶ 6; *see also id.* at ¶ 15. "In general, the Plan covers hospital and medical services and supplies for the treatment of an injury or disease." *Id.* at ¶ 17.

Besides being an employee of Edward Jones, Paul P. is also the father of a minor—B.P. *Id.* at ¶ 1. B.P. is Paul P.'s dependent, and therefore a beneficiary under the Plan. *Id.* at ¶ 5. B.P. has several mental-health conditions and he struggles with a substance-abuse issue. *Id.* at ¶¶ 20, 23–25. In August 2022, B.P. "had a manic episode which resulted in a police altercation and a ten-day hospitalization." *Id.* at ¶ 22. B.P. has also exhibited aggression toward his classmates and his parents. *Id.* at ¶ 21. Though "B.P. participated in out-patient treatment for his mental health and substance abuse disorders . . . this treatment did not provide any significant or long-lasting benefit." *Id.* at ¶ 25. As a result, "B.P.'s conditions continued to deteriorate." *Id.*

Paul P. then had B.P. admitted to blueFire, a "24/7 outdoor behavioral health treatment [center] located in southern Idaho." *Id.* at ¶¶ 26–27. It offers "residential therapy programs for adolescent boys dealing with mental health and addiction issues including cannabis addiction, depression, anxiety, bipolar disorder and traumatic events." *Id.* at ¶ 28. Idaho licenses blueFire "to provide intermediate behavioral health services." *Id.* at ¶ 29. For a little over three months, B.P. "received medical care and treatment . . . at blueFire" for his mental-health and substance-abuse issues. *Id.* at ¶ 26. According to Paul P., "B.P. benefitted from the intensive mental health treatment he received at blueFire and had improvements in each of his diagnosed conditions." *Id.* at ¶ 30. For its services, blueFire charged Paul P. $70,485.00. *Id.* at ¶ 31. But Anthem denied all claims for blueFire's services as investigational and not medically necessary. *Id.* at ¶¶ 32–33. Paul P. exhausted his prelitigation appeal obligations under ERISA and the

terms of the Plan, but Anthem continued to deny his claims for reimbursement. *Id.* at ¶ 64, *see id.* at ¶¶ 34–63.

## II.      Procedural background

In July 2025, Paul P.—individually and on behalf of B.P.—sued Anthem, Edward Jones, and the Plan. *See id.* Plaintiffs assert that the Plan "is a welfare-benefits plan under 29 U.S.C. § 1001 *et seq.*, the Employee Retirement Income Security Act of 1974." *Id.* at ¶ 7. Plaintiffs plead two counts: (i) a wrongful-denial-of-benefits claim under 29 U.S.C. § 1132(a)(1)(B) to recover the expenses of B.P.'s treatment at blueFire, doc. 1 at ¶¶ 69–75, and (ii) a Mental Health Parity and Addiction Equity Act claim, 29 U.S.C. § 1185a, for appropriate equitable relief, doc. 1 at ¶¶ 68, 76–87. Defendants now move to dismiss Plaintiffs' Mental Health Parity and Addiction Equity Act claim. Doc. 23. Having reviewed the parties' briefing, docs. 24, 30, 33, the Court turns to Defendants' Motion.

## III.     Legal standard

### A.      Motion to dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff."  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  But if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Nor does a "pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement" suffice.  *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679.  Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief."  *Id*.  This "context-specific task" requires the Court to "draw on its judicial experience and common sense."  *Id*.

4

B.      **Mental Health Parity and Addiction Equity Act**

Under the Mental Health Parity and Addiction Equity Act, ERISA "group health plans" that offer "both medical and surgical benefits and mental health or substance use disorder benefits. . . shall ensure that":

> (i) the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan (or coverage), and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and
>
> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A).  In short, a plan's "financial requirements" and "treatment limitations" for mental-health benefits must be "no more restrictive" than the "predominant" limitations placed on "substantially all medical and surgical benefits covered by the plan." *See* 29 U.S.C. § 1185a(a)(3)(A).  The Parity Act defines "financial requirements" as including "deductibles, copayments, coinsurance, and out-of-pocket expenses," 29 U.S.C. § 1185a(a)(3)(B)(i), while "treatment limitations" include "limits on the frequency of treatment, number of visits, days of coverage, or other similar limits on the scope or duration of treatment[,]" 29 U.S.C. § 1185a(a)(3)(B)(iii).

The Parity Act's implementing regulations define the term "treatment limitations" to include both "quantitative" and "nonquantitative" limitations.  29 C.F.R. § 2590.712(a)(2).  The difference being:  quantitative treatment limitations restrict benefits based on the frequency of treatment, number of visits, or days of coverage, while a plan's nonquantitative treatment

limitations "otherwise limit the scope or duration of benefits for treatment." 29 C.F.R.

§ 2590.712(a)(2).  And for nonquantitative treatment limitations, the regulation mandates that:

> A plan (or health insurance coverage) may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in designing and applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in designing and applying the limitation with respect to medical/surgical benefits in the classification.

29 C.F.R. § 2590.712(c)(4)(i)(A).  Finally, a "treatment limit is considered to be predominant if it is the most common or frequent of such type of limit or requirement."  29 U.S.C. § 1185a(a)(3)(B)(ii).  "Essentially, [the Parity Act requires that] ERISA plans must treat sicknesses of the mind in the same way that they would a broken bone." *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 980 F. Supp. 2d 527, 542 (S.D.N.Y. 2013).

The parties do not cite, and the Court has not found, binding precedent interpreting the Parity Act.  *See L.P. ex rel. J.P. v. BCBSM, Inc.*, No. 18-cv-1241-MJD/DTS, 2020 WL 981186 (D. Minn. Jan. 17, 2020), at *7 n.5 (D. Minn. Feb. 28, 2020) ("The Supreme Court has not considered the Parity Act.  The Eighth Circuit has cited an older version of the law only once, in a footnote, and in the context of ERISA preemption of state law.").  But "[a]t a minimum, the statutory text directs that Parity Act claims require a comparison between an insurer's treatment limitations for mental-health care and the treatment limitations for medical or surgical care." *T.E. v. Anthem Blue Cross & Blue Shield*, 165 F.4th 971, 986–87 (6th Cir. 2026).

"To establish a violation, [Plaintiffs] must [plausibly] show that the 'treatment limitations' on mental-health care are 'more restrictive' than or 'separate' from the treatment limitations, *id.* at 987 (citing 29 U.S.C. § 1185a(a)(3)(A)(ii)), "applied to substantially all

medical and surgical benefits covered by the plan," *Midthun-Hensen ex rel. K.H. v. Grp. Health Coop. of S. Cent. Wis., Inc.*, 110 F.4th 984, 987 (7th Cir. 2024) (citing 29 U.S.C. § 1185a(a)(3)(A)(ii)).  In sum, to survive Defendants' Motion, Plaintiffs must:

> (1) plausibly allege the relevant group health plan is subject to the Parity Act;
>
> (2) identify a specific treatment limitation on mental health or substance-use disorder benefits covered by the plan; and
>
> (3) plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations that defendants would apply to substantially all medical and surgical benefits covered by the plan.

*See E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1283 (10th Cir. 2023)[1]; *T.E.*, 165 F.4th at 986–87; *Midthun-Hensen*, 110 F.4th at 987.  And "[w]ithin the confines of" this test, plaintiffs "may challenge treatment limitations either facially or as applied."  *E.W.*, 86 F.4th at 1284 (citing 29 C.F.R. § 2590.712(c)(4)(i), which specifies that when dealing with a nonquantitative treatment limitation, the Parity Act's requirements apply to "the terms of the plan . . . *as written and in operation*" (emphasis added)).

"A facial challenge focuses on the terms of a plan."  *Id.*  "A plaintiff must identify an express limitation on benefits for mental health or substance use disorder treatment and demonstrate a disparity compared to benefits for the relevant medical or surgical analogue."  *Id.*  "By contrast, as-applied challenges focus on treatment limitations that a plan applies 'in operation.'"  *Id.*  "In an as-applied challenge, a plaintiff must plausibly allege that a defendant differentially applies a facially neutral plan term."  *Id.* (citation modified).

---

[1] Notably, the court in *E.W.* applied the elements of a test on which the parties agreed, but nowhere did the court state that it adopted that test.  *See E.W.*, 86 F.4th at 1282–83.  After carefully reviewing the applicable statutory text, *E.W.*, *T.E.*, and *Midthun-Hensen*, the Court finds that the three elements set out above accurately state what a plaintiff must plausibly allege.

## IV.        Discussion

Defendants argue that Plaintiffs' Parity Act claim fails "for two independent reasons." Doc. 24 at 2.  One, Plaintiffs failed to plausibly plead a Parity Act claim.  *Id.* at 2, 8–14.  And two, Plaintiffs cannot seek "equitable relief" under the Parity Act for "a purported wrongful denial of benefits."  *Id.* at 14; *see id.* at 2, 14–16.  The Court addresses each argument in turn.

### A.        Plaintiffs plausibly plead a Parity Act claim

In their Complaint, Plaintiffs assert that Anthem's denial of coverage violated the Parity Act facially and as applied.  *See* doc. 1 at ¶¶ 81–82, 84.  But after Defendants argued that Plaintiffs' "allegations are contradicted by the plain language of the medical policy and the Plan's term," doc. 24 at 9, Plaintiffs conceded their facial challenge, doc. 30 at 4 ("[T]he medical policy at issue facially applies across the board.").  Instead, Plaintiffs argue that the Court can plausibly infer from their Complaint "that in practice, the policy is used to limit certain kinds of mental health and substance abuse care but not analogous medical/surgical care."  *Id*.

The Court agrees.  The Eight Circuit has held that "[p]leading on information and belief is expressly contemplated by the Federal Rules of Civil Procedure."  *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (citing Fed. R. Civ. P. 11(b)(3)).  And though "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.* at 954 (citing *Iqbal*, 556 U.S. at 678), courts "cannot always expect plaintiffs to provide robust evidentiary support for their allegations at the pleading stage[,]" *id.*  "[I]n some contexts, that information may not be available to them before discovery."  *Id.*

ERISA is one such context.  *Id.*; *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) ("If plaintiffs cannot state a claim without pleading facts which tend

systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.")).  Thus, the Eighth Circuit held that "allegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible."  *Ahern Rentals*, 59 F.4th at 954.

For an "as-applied challenge, a plaintiff must plausibly allege that a defendant differentially applies a facially neutral plan term."  *E.W.*, 86 F.4th at 1284 (citation modified). Here, Plaintiffs allege that "[u]pon information and belief, Anthem/the Plan's denial of coverage also violated the [Parity Act] in application or effect."  Doc. 1 at ¶ 83.  And "[b]ecause Anthem/the Plan declined to produce the requested documents and materials requested by Plaintiffs," Plaintiffs aver that "further discovery is needed to resolve this aspect of Plaintiffs' claims."  *Id.*; *see also id.* at ¶¶ 39, 49, 55, 61 (discussing Plaintiffs' requests for documents from Defendants to assist in pleading their Parity Act claim).  Finally, Plaintiffs allege that Defendants violated the Parity Act "because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification."  *Id.* at ¶ 84 (citing 29 C.F.R. § 2590.712(c)(4)(i)).

So while typically "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim, *Ahern*, 59 F.4th at 954 (citing *Iqbal*, 556 U.S. at 678), the unique posture of this case presents an instance where certain facts necessary to state a plausible claim "tend systemically to be in the sole possession of

9

defendants." *Braden*, 588 F.3d at 598; *see* doc. 1 at ¶¶ 39, 49, 55, 61. Thus, contrary to Defendants' assertion, doc. 33 at 7, a "careful and holistic evaluation of" Plaintiffs' Complaint reveals they are not "merely engaged in a fishing expedition," *Braden*, 588 F.3d at 598; *see generally* doc. 1. They have raised a "plausible inference that [Plaintiffs are] entitled to relief." *Braden*, 588 F.3d at 598.

### B. Plaintiffs may assert different theories of liability

Next Defendants argue that "Plaintiff[s] improperly assert[] duplicative claims under 29 U.S.C. [§§] 1132(a)(1)(B) and 1132(a)(3) premised on the same theory of liability (wrongful denial of benefits)." Doc. 24 at 2, *see id.* at 14–16. The Court disagrees.

The Eight Circuit has held that "so long as two claims 'assert different theories of liability' plan beneficiaries 'may plead both.'" *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 547 (8th Cir. 2017) (citing *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 728 & n.12 (8th Cir. 2014)). "At the pleading stage, it is difficult to determine if relief is indeed owed under [section] 1132(a)(1)(B), and requiring the plaintiff to pursue that path may foreclose the plaintiff from bringing a better case pursuant to [section] 1132(a)(3)." *Silva*, 762 F.3d at 727. Here, "despite the similarity of the relief," Plaintiffs' claims "allege distinct theories of liability." *Jones*, 856 F.3d at 547; *cf.* doc. 1 at ¶¶ 69–75 *with id.* at ¶¶ 76–87. Though the Court may revisit the issue at a later stage in the case, the Court cannot determine at the motion to dismiss stage whether the relief available under section 1132(a)(1)(B) would adequately remedy Plaintiffs' alleged injuries if they were to prevail.

## V.    Conclusion

Accordingly, the Court denies Defendants' [23] Motion to Dismiss Plaintiffs' Parity Act claim.  The Court reiterates that Defendants must file any response to the complaint no later than June 29, 2026.  Doc. 26.

So ordered this 15th day of June 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

11